IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

LOUIS P. BARBAGLIA, et al.,       )
                                  )
   Plaintiffs,                 )
                                  )
v.                                )       No. 11-2205
                                  )
NONCONNAH HOLDINGS, LLC,          )
                                  )
   Defendant.                  )

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant Nonconnah Holdings, LLC's ("Nonconnah") November 15, 2012 Motion for Summary Judgment. (Mot. for Summ. J., ECF No. 96.)  Plaintiffs Louis P. Barbaglia and Marilyn Barbaglia, individually and as husband and wife (collectively "the Barbaglias"), filed a Response on December 13, 2012.  (Resp., ECF No. 97.)  On December 27, 2012, Nonconnah filed a Reply to the Barbaglias' Response.  (Reply, ECF No. 98.)

For the following reasons, Nonconnah's Motion for Summary Judgment is GRANTED.

### I.   Background

All facts are taken from the Barbaglias' Response to Nonconnah's Statement of Undisputed Material Facts unless otherwise stated.  (Pls.' Resp. to Undisp. Facts, ECF No. 97-4.) Louis P. Barbaglia ("Barbaglia") was injured when he slipped

while exiting a truck in a parking lot on Nonconnah's property. The Barbaglias claim that Nonconnah's negligence caused Barbaglia's injury.

Nonconnah owns property at the Nonconnah Corporate Center industrial park (the "Corporate Center") in Memphis, Tennessee. (Id. ¶¶ 1-2.) Nonconnah owns 27 separate properties covering 290 adjacent acres at the Corporate Center. The properties are managed by Premium Assets, Inc. ("Premium"). (Id. ¶¶ 3, 5.) During the relevant time, Premium employed four maintenance employees to service properties in the Corporate Center. The maintenance employees generally arrived at work at 8:00 a.m. and left at 5:00 p.m., but could arrive as early as 2:00 a.m. if Premium decided there was a sufficient accumulation of snow or ice. (Id. ¶¶ 7-8, 27.) Premium also maintained a landscaping subcontract with Landscape Services Group ("LSG") for removal of substantial ice and snow accumulation. (Id. ¶ 9.) Premium performed walk-through inspections of all Nonconnah properties in the Corporate Center twice a month. (Id. ¶ 13.) The Barbaglias contend that those inspections were unrelated to any potential snow and ice accumulations because they were focused on issues inside buildings and general maintenance. (Id. ¶¶ 13, 15.) Premium relied on tenants to notify it of any special problems in common areas. (Id. ¶ 16.) However, Premium would remediate winter weather accumulations without a specific tenant

request if the City of Memphis instituted its inclement weather policy. (Id. ¶ 19.)

The Barbaglias contend that removal of ice and snow was not a part of Premium's employees' routine building checks and that, when there was accumulation, Premium used only "Ice Melt" and serviced only the building entrances, not the parking lots. (Id. ¶ 10.)   They contend that Premium has never contacted LSG to remove snow or ice pursuant to its contract. (Id.)   Although the Barbaglias admit that Premium sweeps the parking lot using sweeping trucks, they argue that those sweeps are to clear debris and not to remove winter weather accumulations. (Id. ¶ 14.)

On February 16, 2010, Barbaglia was employed by IKON Office Solutions ("IKON") as a truck driver. (Id. ¶ 29.)   At 5:00 a.m. on February 16, Barbaglia arrived at 1910 Nonconnah Boulevard, the area of the Corporate Center that IKON rented, to make a delivery. (Id. ¶ 31.)   Trace precipitation, equal to less than 1/100th of an inch,[1] was observed three times during the afternoon of February 15, 2010, and no precipitation was observed at any time on February 16, 2010. (See Id. ¶ 22; NOAA Certified Weather Info., ECF No. 96-7.)   Premium was unaware of

---

[1] Although Nonconnah and Barbaglia state that trace precipitation is defined as less than 1/10 of an inch, they do not cite any source for their statement.  The National Oceanic and Atmospheric Association on which they rely for their weather data, defines trace amounts as less than 1/100 of an inch.  See http://www.srh.noaa.gov/fwd/?n=filloutb92; http://www.srh.weather.gov/srh/jetstream/append/glossary_t.htm.

any icy conditions in the parking area on February 15 or 16.
(Pls.' Undisp. Facts ¶ 20.)  IKON did not notify Premium or
Nonconnah of any slippery conditions on or before February 16,
2010.  (Id. ¶ 25.)  Barbaglia did not see any water or snow in
the parking lot and did not experience his vehicle slipping or
sliding as he drove in.  (Id. ¶ 32.)  The parking lot at 1910
Nonconnah Boulevard was brightly lit, and Barbaglia had no
trouble seeing on February 16.  (Id. ¶ 33.)

As Barbaglia exited his truck, he held onto the steering wheel
with his left hand and his laptop with his right hand, and
stepped onto the steel sidestep below the cab.  (Id. ¶¶ 35-37.)
As Barbaglia let go of the steering wheel and stepped down onto
the ground, he continued looking into the cab of the truck and
not at the ground where he was stepping.  (Id. ¶¶ 38-39.)  When
Barbaglia's foot hit the ground, he slipped sideways and fell
onto his right hand, "punching" the pavement while still holding
the laptop.  (Id. ¶ 40.)  The Barbaglias allege that Barbaglia
slipped on black ice or other slick substances in the parking
lot.  (Am. Compl. ¶ 22.)  The Barbaglias allege that Barbaglia
suffered significant injury to his right hand, lost wages, loss
of future earning capacity, and pain and suffering caused by
Nonconnah's negligent failure to prevent or remediate the
hazardous condition.  (Id. ¶¶ 31-33.)

**II.  Jurisdiction**

4

Nonconnah removed the case to this Court under 28 U.S.C § 1332.  District courts have "jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between...citizens of different states."  28 U.S.C § 1332(a)(1). The parties are completely diverse as shown by the Notice of Removal, (ECF No. 1), and the Amended Complaint, (ECF No. 86). The Barbaglias do not allege an amount in controversy.  (See Am. Compl.)

"A defendant wishing to remove a case bears the burden of satisfying the amount-in-controversy requirement."  Everett v. Verizon Wireless, Inc., 460 F.3d 818, 822 (6th Cir. 2006). Where "plaintiffs seek 'to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendant satisfies its burden when it proves that the amount in controversy 'more likely than not' exceeds $75,000."  Id. (quoting Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993)).  Nonconnah's Notice of Removal includes a Worker's Compensation Lien alleged against it by Barbaglia's insurer in the amount of $95,685.22.  (ECF No. 1-4.)  The Notice also identifies Barbaglia's claims for further damages, including lost wages, loss of future earning capacity, and pain and suffering.  (Not. Of Removal.)  Barbaglia does not allege or stipulate that he seeks less than $75,000 in damages.

Nonconnah has satisfied its burden.  It is more likely than not that the amount in controversy exceeds $75,000.  The Court has diversity jurisdiction.

**III. Choice of Law**

In a diversity action, state substantive law governs.  See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  To determine the governing state law, a federal district court must apply the choice-of-law rules of the state in which it sits.  See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted).

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hicks v. Lewis, 148 S.W.3d 80, 86 (Tenn. Ct. App. 2003) (quoting Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992)).  The injuries alleged in this case occurred in Tennessee, Nonconnah contends that Tennessee law should apply, and the Barbaglias do not argue that any other state has a more significant relationship to the litigation.  Tennessee substantive law governs the Barbaglia's tort claims.

**IV.  Standard of Review**

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See

Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in his favor." Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The local rules of this district establish specific requirements that must be satisfied by the non-moving party. The party opposing summary judgment must respond to each fact set forth by the moving party by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the

8

summary judgment motion only, or by demonstrating that the fact is disputed.  W.D. Tenn. L.R. 56.1 (b).  The non-moving party must make specific citations to the record to support each contention that a particular fact is in dispute.  Id.  The non-moving party's failure to respond as required to the moving party's statement of material facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment."  W.D. Tenn. L.R. 56.1(d).

## V.   Analysis

The Barbaglias argue that Nonconnah had a duty of reasonable care to maintain the premises at the Corporate Center and that it violated that duty by failing to remediate an accumulation of snow or ice in the parking lot of the Corporate Center at or before 5:00 a.m. on February 16, 2010.  The Barbaglias argue that Nonconnah had actual or constructive notice of the accumulation and knew or should have known that contractors such as Barbaglia would be present on the site to complete deliveries.  They argue that the accumulation was not apparent to Barbaglia in the exercise of ordinary care and that Nonconnah had a duty to warn him and others of latent hazards on the premises.  The Barbaglias argue that Nonconnah was negligent in maintaining its property and that Nonconnah's negligence was the actual and proximate cause of the injuries Barbaglia sustained

when he fell in the parking lot of the Corporate Center on February 16, 2010.  (Am. Compl.)

Nonconnah argues that the Barbaglias have failed to establish that Nonconnah breached its duty to maintain its premises in a reasonably safe condition.  It also argues that the Barbaglias cannot show that Nonconnah created the alleged dangerous condition or that it had actual or constructive notice of the alleged dangerous condition.  Nonconnah argues, in the alternative, that if Nonconnah is not entitled to summary judgment on the question of negligence, the Court should find that reasonable minds could not differ that Barbaglia's fault was equal to or greater than Nonconnah's.  (Mot. for Summ. J.)

### A. Tennessee Negligence Standard

To establish a "prima facie claim of negligence" a plaintiff must establish "'(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" Morrison v. Allen, 338 S.W.3d 417, 437 (Tenn. 2011) (quoting Giggers v. Memphis Housing Auth., 277 S.W.3d 359, 364 (Tenn. 2009)).  "To determine whether a particular defendant owes a duty of care to a particular plaintiff, [courts] balance the foreseeability and gravity of the potential harm against the feasibility and availability of alternatives that would have

10

prevented the harm." <u>Hale v. Ostrow</u>, 166 S.W.3d 713, 716 (Tenn. 2005).  The "'foreseeability prong is paramount because foreseeability is the test of negligence.'" <u>Id.</u> at 716-17 (quoting <u>Biscan v. Brown</u>, 160 S.W.3d 462, 480 (Tenn. 2005) (internal quotations omitted)).  "[F]oreseeability alone 'is not, in and of itself sufficient to create a duty'....Rather when a minimum threshold of foreseeability is established, courts must engage in 'an analysis of the relevant public policy considerations' to determine whether a duty enforceable in tort must be imposed." <u>Giggers</u>, 277 S.W.3d at 365-66 (quoting <u>Satterfield v. Breeding Insulation Co.</u>, 266 S.W.3d 347, 364-66 (Tenn. 2008)).  Courts in Tennessee consider the following factors when deciding whether a risk is unreasonable:

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

<u>Id.</u> at 366 (quoting <u>McCall v. Wilder</u>, 913 S.W.2d 150, 153 (Tenn. 1995)).

In a negligence action, "the standard of conduct is always the same.  It is a standard of reasonable care in light of the apparent risk." <u>McCall</u>, 913 S.W.2d at 153.  "If a defendant fails to exercise reasonable care under the circumstances, then

he or she has breached his or her duty to the plaintiffs." West
v. East Tenn. Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005).
Reasonable care "must be given meaning in relation to the
circumstances," it is "to be determined by the risk entailed
through probable dangers attending the particular situation and
is to be commensurate with the risk of injury."  Id.

    "'Causation [in fact] and proximate cause are distinct
elements of negligence, and both must be proven by the plaintiff
by a preponderance of the evidence.'"  Hale, 166 S.W.3d at 718
(quoting Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn.
1993)).  Both types of causation are "'ordinarily jury
questions[] unless the uncontroverted facts and inferences to be
drawn from them make it so clear that all reasonable persons
must agree on the proper outcome.'"  Id. (quoting Haynes v.
Hamilton County, 883 S.W.2d 606, 612 (Tenn. 1994)).  A plaintiff
establishes cause in fact when "as a factual matter [defendant's
conduct] directly contributed to the plaintiff's injury...[and]
the plaintiff's injury would [not] have happened 'but for' the
defendant's act."  Id.  Proximate cause is determined by a
three-pronged test:

        (1) the tortfeasor's conduct must have been a 'substantial
        factor' in bringing about the harm being complained of; and
        (2) there is no rule or policy that should relieve the
        wrongdoer from liability because of the manner in which the
        negligence has resulted in the harm; and (3) the harm
        giving rise to the action could have reasonably been

> foreseen or anticipated by a person of ordinary
> intelligence and prudence.

Id. (quoting Haynes, 883 S.W.2d at 612).

Premises liability cases are a narrower category than cases of general negligence.  Because "[l]iability in premises liability cases stems from superior knowledge of the condition of the premises," when a plaintiff alleges liability for the existence of "a dangerous or defective condition" on a defendant's property, he must:

> prove in addition to the elements of negligence, that: (1)
> the condition was caused or created by the owner, operator,
> or his agent, or (2) if the condition was created by
> someone other than the owner, operator, or his agent, that
> the owner or operator had actual or constructive notice
> that the condition existed prior to the accident.

Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004) (internal quotations omitted).  In Tennessee, "constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition."  Id.  Plaintiffs may also prove constructive notice "by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence."  Id.  This proof "relieves plaintiffs of the difficult burden of showing the duration of a particular occurrence so long as plaintiffs can show that the dangerous condition was part of 'a pattern of

13

conduct, a recurring incident, or a general or continuing condition' such that its presence was reasonably foreseeable to the premises owner." Id.

### B. Notice

In addition to the elements of negligence, to impose liability on Nonconnah for the injury Barbaglia allegedly sustained on its premises, the Barbaglias must prove that Nonconnah caused the alleged dangerous condition or had actual or constructive notice of the condition. The Barbaglias do not allege that Nonconnah caused the alleged accumulation of black ice or other slick substance and admit that Nonconnah did not have actual notice of the alleged accumulation. (See Pls.' Undisp. Facts ¶ 20.) Nonconnah contends that the Barbaglias cannot establish that it had constructive knowledge of the hazard on its property because: (1) the Barbaglias have not alleged that the condition was present for such a length of time that Nonconnah should have become aware of it in the exercise of ordinary care and (2) there is no evidence of a pattern of conduct or recurring incident of ice on the premises. (Mot. for Summ. J.)

Nonconnah's argument that the Barbaglias have neither alleged facts nor submitted evidence about the duration or obviousness of the alleged black ice or slick substance is properly supported and shifts the burden of production to them.

14

As Nonconnah argues, the Barbaglias have not raised any genuine disputes of material fact about the alleged accumulation because they have not submitted any facts about it at all.

Nonconnah's argument that the Barbaglias have submitted no facts about a pattern of conduct, a recurring incident, or a general or continuing condition that constituted constructive notice is not properly supported. Nonconnah's contention is conclusory. It states that "[i]n the present case, there is no evidence of a pattern of conduct or recurring incident with respect to ice on Nonconnah's premises." (Mot. for Summ. J.) Nonconnah's interpretation of the standard is overly narrow. The Barbaglias allege that there were multiple instances of winter accumulation during February 2010, and that Nonconnah had a policy of failing to perform winter weather remediation in parking lots. (Am. Compl.) If the Barbaglias adduce facts to support those allegations, a reasonable jury could conclude that recurring weather conditions and Nonconnah's pattern of inaction gave it constructive notice that there were potential winter weather hazards in its parking lots. Nonconnah has not adduced facts to counter the Barbaglias' allegations and has not attempted to show in a meaningful way that they cannot prove this essential element of their case. The burden does not shift to the Barbaglias to demonstrate that there is a genuine dispute

of material fact.  Nonconnah is not entitled to summary judgment
on the question of constructive notice.

### C. Breach of Duty

Although Nonconnah is not entitled to summary judgment on
the question of notice, summary judgment is appropriate because
as a matter of law the Barbaglias cannot show that Nonconnah
breached a duty that it owed to Barbaglia.  Nonconnah appears to
concede that it owed Barbaglia a duty of reasonable care, as a
property owner to a business invitee, to maintain its premises
in a safe condition.  Nonconnah argues, however, that it did not
breach that duty by failing to remove the alleged accumulation
of snow or ice that the Barbaglias claim caused the injury.
Nonconnah contends that courts in Tennessee have repeatedly
recognized that property owners are not required to take
extraordinary measures to remove accumulations or to keep their
property free of natural accumulations at all times.  (Mot. for
Summ. J.)

As Nonconnah argues, courts in Tennessee have specifically
addressed a property owner's duty of care when there are natural
accumulations of ice and snow.  "The existence of a dangerous
condition alone is insufficient to give rise to liability."
Bowman v. State, 206 S.W.3d 467, 473 (Tenn. Ct. App. 2006).
"Dangerous conditions created by the natural accumulation of
snow or ice are considered to be among the 'normal hazards of

16

life.'" _Clifford v. Crye-Leike Comm., Inc._, 213 S.W.3d 849, 853
(Tenn. Ct. App. 2006) (quoting _Grizzell v. Foxx_, 348 S.W.2d 815,
817 (Tenn. Ct. App. 1960)).  Property owners are "not required
to keep their premises free of natural accumulations of snow and
ice at all times....[T]hey are expected to take reasonable steps
to remove natural accumulations of snow or ice within a
reasonable time."  _Id._  Where the precipitation:

> is recent or continuous, the duty to remove such
> obstruction as it forms cannot be imposed, and the dangers
> arising therefrom are viewed as the normal hazards of life,
> for which no owner or person in possession of property is
> held responsible.  It is only when the owner or possessor
> having a duty to remove snow and ice, improperly permits an
> accumulation thereof to remain after a reasonable length of
> time for removal has elapsed, that liability may arise for
> the unsafe and dangerous condition thereby created.

_Howard v. FMS, Inc._, No. 01A01-9707-CV-00479, 1998 Tenn. App.
LEXIS 258, at *8-9 (Tenn. Ct. App. April 24, 1998) (quoting
_Goodman v. Corn Exchange Nat'l Bank & Trust Co._, 200 A. 642, 643
(Pa. 1938)). In deciding whether a property owner's efforts to
remove snow and ice are reasonable, courts consider "(1) the
length of time the accumulation has been present, (2) the amount
of accumulation, (3) whether the accumulation could be, as a
practical matter, removed, (4) the cost of removal, and (5) the
foreseeability of injury." _Bowman_, 206 S.W.3d at 474.

The Barbaglias allege that Barbaglia slipped on a patch of
"black ice and/or other slick substances" that had accumulated
"during or shortly before February 16, 2010," and that Nonconnah

17

had "left unattended" on February 16 at 5:00 a.m., when

Barbaglia arrived at the corporate center to make a delivery.

(Am. Compl. ¶¶ 21-23.)  Nonconnah contends that the existence of

the alleged black ice or slick substance was not reasonably

foreseeable, and that no feasible preventative measures could

have been taken to prevent Barbaglia's injury.  (Mot. for Summ.

J.)  Nonconnah has submitted, and the Barbaglias have admitted

for purposes of summary judgment, evidence in support of its

contentions.  The parties agree that trace precipitation, which

is equal to less than 1/100th of an inch, was observed three

times during the afternoon of February 15, 2010, and that no

precipitation was observed at any time on February 16, 2010.

(See Pls.' Undisp. Facts ¶ 22; NOAA Certified Weather Info., ECF

No. 96-7.)  The parties agree that Nonconnah's maintenance

contractor, Premium, was unaware of any alleged icy conditions

in the parking area on February 15 or 16.  (Pls.' Undisp. Facts

¶ 20.)  The parties agree that Barbaglia's employer, IKON, did

not notify Premium or Nonconnah of the existence of any slippery

condition on or before February 16, 2010.  (Id. ¶ 25.)  They

agree that Barbaglia did not see any water or snow in the

parking lot and did not experience his vehicle slipping or

sliding as he drove in.  (Id. ¶ 32.)

     The parties agree that Nonconnah owns 290 adjacent acres

within the Corporate Center.  (Id. ¶ 3.)  They agree that

Premium employs four maintenance employees to maintain this area and that those employees work between 8:00 a.m. and 5:00 p.m. unless there is sufficient inclement weather or a specific request to require them to work during off hours. (Id. ¶¶ 7-8, 27.)  The parties agree that Premium would remediate winter weather accumulations without a specific tenant request if the City of Memphis instituted its inclement weather policy. (Id. ¶ 19.)

Although questions of reasonableness are typically reserved for the jury, in cases where it is clear as a matter of law that there has been no breach, courts may properly decide the question of reasonableness on summary judgment.  Compare Mumford v. Thomas, 603 S.W.2d 154, 156 (Tenn. Ct. App. 1980); with Clifford, 213 S.W.3d at 853.  The facts adduced by Nonconnah and admitted by the Barbaglias demonstrate that Nonconnah's inaction was reasonable under the circumstances and shift the burden of production to the Barbaglias to demonstrate that there is a genuine dispute of material fact.  The undisputed facts show there was very little, if any, accumulated precipitation on the ground in Memphis on February 15 or 16, 2010, and that any accumulation had been present for less than 24 hours at the time of Barbaglia's injury.  Under the facts as agreed, an injury sustained by a contractor caused by winter weather accumulation at the Corporate Center on February 16 was not reasonably

19

foreseeable.  The undisputed facts also show that, given the large size of the property, the number of maintenance workers and their typical schedule, it would be prohibitively expensive for Nonconnah to monitor the condition of all parking lots 24 hours a day.  This case is an example of the unreasonable potential burden on property owners that the case law seeks to avoid.

The Barbaglias' arguments focus on Nonconnah's alleged policy of failing to clear the parking lots in the Corporate Center and remediating only accumulations on sidewalks and walkways.  (Resp.)  The question is not whether Nonconnah ever cleared any accumulation.  It is undisputed that Nonconnah did not perform any winter weather remediation in the parking lot on February 15 or 16.  The relevant legal question is whether its failure to do so under the circumstances was reasonable and, therefore, not a breach of the duty of reasonable care.

The Barbaglias do not point to any particular facts that demonstrate a genuine dispute between the parties about any of the factors of the Bowman analysis.  Although the parties have numerous factual disputes, they do not appear to dispute any facts that are material to the question of the alleged breach. The parties agree that Barbaglia slipped and was injured in a parking lot that Nonconnah was under an obligation to maintain with reasonable care.  They agree that there had been very

little recent precipitation.  They agree that Barbaglia did not see or experience any accumulation when driving onto the parking lot.  Indeed, they agree that no party was aware of any dangerous condition before the accident.  They agree that Nonconnah was responsible for a large area and had limited maintenance resources.  Under the facts as agreed by the parties, Nonconnah's failure to remediate any existing accumulation of snow and ice in its parking lots at or before 5:00 a.m. on February 16, 2010, was reasonable, and it did not breach its duty of reasonable care to invitees on its premises.

Because the lack of breach is dispositive, the Court need not address the questions of causation in fact or proximate causation.

### D. Comparative Fault

Because summary judgment is warranted on other grounds, the Court need not address Nonconnah's arguments about comparative fault.

### VI. Conclusion

For the foregoing reasons, Nonconnah's Motion for Summary Judgment is GRANTED.

So ordered this 17th day of June, 2013.

s/ Samuel H. Mays, Jr.____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

21